IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JENNIFER WEST, as the personal representative of the Estate of Ronald West, Jr., deceased;<br><br>Plaintiff,<br><br>vs.<br><br>UNION PACIFIC RAILROAD COMPANY,<br><br>Defendant. | 8:17CV36<br><br>**MEMORANDUM AND ORDER** |

Defendant, Union Pacific Railroad (UPRR), moves to exclude the expert testimony of Dr. Ernest Chiodo (Dr. Chiodo) and Dr. Hernando Perez (Dr. Perez) at trial. (Filing No. 73; Filing No. 74). Further, UPRR moves for summary judgment claiming there are no genuine issues of material fact regarding exposure and causation. (Filing No. 75).

For the reasons discussed below, the motion to exclude the expert testimony of Dr. Chiodo and UPRR's motion for summary judgment will be granted. The motion to exclude the expert testimony of Dr. Perez will be denied as moot.

FACTUAL STATEMENT

Jennifer West, as personal representative of the estate of Ronald West (Plaintiff), is suing Ronald West's former employer, UPRR, under the Federal Employers Liability Act (FELA) 45 U.S.C. § 51 *et seq.*, alleging workplace exposure

to toxic substances and carcinogens caused his renal cancer[1]. (Filing No. 1 at CM/ECF p. 2). Ronald West (West) was diagnosed on February 8, 2013 and passed away on February 9, 2014. (Filing No. 67-2 at CM/ECF p. 2, 8).

West worked for UPRR from 1994 to 2014 as a railroad conductor. (Filing No. 1 at CM/ECF p. 2). The Complaint alleges that during West's employment, he was exposed to diesel fuel/exhaust, benzene, heavy metals, creosote, manganese and rock/mineral dust and fibers.[2] (Id.)

Plaintiff designated Dr. Chiodo as a medical expert, "who will testify as to general and specific causation…" (Filing No. 76-1, at CM/ECF p. 1). Dr. Chiodo's opinion concentrates on West's exposure to diesel exhaust. (Filing No. 76-2, at CM/ECF p. 15). Plaintiff designates Dr. Perez as a liability expert, "who will testify, generally, as to notice and foreseeability… including exposure to carcinogens and the railroad industry's knowledge of the hazards of exposure to toxins." (Filing No. 76-1, at CM/ECF p. 1). UPRR claims Dr. Chiodo and Dr. Perez' opinions "fail to meet the requirements of admissibility as set forth in Fed. R. Evid. 702, 703, 705, and Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993)." (Filing No. 73; Filing No. 74).

DAUBERT MOTION

Plaintiff's claim against UPRR is for negligence under the FELA. The FELA provides railroad employees with a federal claim for injuries "resulting in whole or in part from the negligence" of the railroad. 45 U.S.C. § 51. The statute imposes

---

[1] The only claim remaining is Plaintiff's wrongful death claim. The survival claim was dismissed in Filing No. 96.

[2] Plaintiff has withdrawn all toxic exposure claims except those arising from alleged exposure to diesel exhaust and components in diesel exhaust. (Filing No. 76-2, at CM/ECF p. 15).

upon employers a continuous duty to provide a reasonably safe place to work. Cowden v. BNSF Ry. Co., 690 F.3d 884, 889 (8th Cir. 2012). The FELA is to be liberally construed, but it is not a workers' compensation statute, and the basis of liability is "negligence, not the fact that injuries occur." Consolidated Rail Corp. v. Gottshall, 512 U.S. 532, 543 (1994). To prevail under the FELA, Plaintiff must prove the elements of a negligence claim; duty, breach, foreseeability, and causation. Crompton v. BNSF Ry. Co., 745 F.3d 292, 296 (7th Cir. 2014); Tufariello v. Long Island R. Co., 458 F.3d 80, 87 (2d Cir. 2006).

## I. Standard of Review

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. The court must assume a gatekeeping function to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." Daubert, 509 U.S. at 589. To carry out this function, the court must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999).

> A witness can be qualified as an expert by "knowledge, skill, experience, training, or education," Fed.R.Evid. 702, and it is the

responsibility of the trial judge to determine whether a particular expert has sufficient specialized knowledge to assist jurors in deciding the specific issues in the case. See Kumho Tire, 526 U.S. at 156, 119 S.Ct. 1167.

Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc., 254 F.3d 706, 715 (8th Cir. 2001). The party offering the challenged testimony bears the burden of establishing admissibility by a preponderance of the evidence. Lauzon v. Senco Prods., Inc., 270 F.3d 681, 686 (8th Cir. 2001) (citing Daubert, 509 U.S. at 592).

Daubert established a non-exclusive checklist for trial courts to use in assessing the reliability of expert testimony, including whether the theory or technique can and has been tested, whether it has been subjected to peer review, whether there is a high known or potential rate of error, and whether the theory or technique enjoys general acceptance within a relevant scientific community. See U.S. v. Holmes, 751 F.3d 846, 850 (8th Cir. 2014) (citing Daubert, 509 U.S. at 592-94). And for the purposes of evaluating the relevance of expert testimony, the Court must determine whether the expert's reasoning or methodology was applied properly to the facts at issue. Daubert, 509 U.S. at 580. To that end, expert testimony that is speculative, unsupported by sufficient facts, or contrary to the facts of the case, is inadmissible. Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748, 757 (8th Cir. 2006).

The Court applies a relaxed standard of causation under the FELA. CSX Transp., Inc. v. McBride, 564 U.S. 685, 131 S.Ct. 2630, 2636, 180 L.Ed.2d 637 (2011); Paul v. Missouri Pac. R. Co., 963 F.2d 1058, 1061 (8th Cir. 1992). "Under [the FELA] the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." Id. This modified standard of causation does not, however, change the Daubert analysis. See

Steggall v. BNSF Ry. Co., No. 7:18CV5000, 2019 WL 1492579, at *3 (D. Neb. Apr. 4, 2019) ("The Daubert standard governs the application of Rule 702 and applies to FELA and non-FELA actions."); In re Conrail Toxic Tort Fela Litig., No. CIV. A 94-11J, 1998 WL 465897, at *6 (W.D. Pa. Aug. 4, 1998) (holding Daubert is properly applied in a FELA case); Hose v. Chi. Nw. Transp. Co., 70 F.3d 968, 972 (8th Cir. 1995) (applying Daubert in a FELA action challenging plaintiff's proposed expert testimony).

## II. The Opinion of Dr. Chiodo

Dr. Chiodo opines West's exposure to diesel exhaust in the workplace caused or contributed to his development of renal cancer. (Filing No. 76-3, at CM/ECF p. 5). Dr. Chiodo is a well-qualified, highly credentialed expert in the medical fields of internal and occupational medicine. (Filing No. 76-2, at CM/ECF p. 19-20). Further, he is certified in the engineering and public health discipline of industrial hygiene. (Id.). He also describes himself as a toxic tort lawyer. (Filing No. 76-2, at CM/ECF p. 8-9).

According to his report, Dr. Chiodo based his opinion on the review of medical records, discovery and pleadings from this case, Plaintiff's deposition, and the deposition of West's co-worker[3]. (Filing No. 76-3, at CM/ECF p. 2-3). Dr. Chiodo testified he also relied on his knowledge, training, and experience in forming his opinion. (E.g., Filing No. 76-2, at CM/ECF p. 6; Filing No. 76-2, at CM/ECF p. 18). He states he did not rely on any studies or literature to make his opinion, but after reaching his opinion, he looked for literature to corroborate it. (E.g. Filing No. 76-2, at CM/ECF p. 3; Filing No. 76-2, at CM/ECF p. 7; Filing No. 76-2, at CM/ECF p. 19; Filing No. 76-2, at CM/ECF p. 26).

---

[3] The deposition of Ronald Henderson.

Dr. Chiodo recalls treating one patient with renal cancer over 20 years ago. (Filing No. 76-2, at CM/ECF pp. 13-14). He has not written or published papers on renal cancer or diesel exhaust (Filing No. 76-2, at CM/ECF p. 15), nor conducted research relating to diesel exhaust or renal cancer (Filing No. 76-2, at CM/ECF p. 16). The only research he performed relating to the association between renal cancer and diesel exhaust is what he refers to as "secondary research," reviewing and assessing literature to corroborate his opinion. (Filing No. 76-2, at CM/ECF p. 16).

### a. Causation

To prove causation in a toxic tort case, a plaintiff must show both general causation, "that the alleged toxin is capable of causing injuries like that suffered by the plaintiff in human beings subjected to the same level of exposure as the plaintiff," and specific causation, "that the toxin was the cause of the plaintiff's injury." Mattis v. Carlon Elec. Prod., 295 F.3d 856, 860 (8th Cir. 2002).

#### i. General Causation

UPRR argues Dr. Chiodo's opinion on general causation is not based on any accepted scientific methodology. (Filing No. 79, at CM/ECF pp. 16-17). Dr. Chiodo testified his methodology for determining diesel exhaust can cause renal cancer was based on his "knowledge, training, and experience." (E.g., Filing No. 76-2, at CM/ECF p. 6; Filing No. 76-2, at CM/ECF p. 18). After forming his opinion that diesel exhaust causes renal cancer Dr. Chiodo found studies he believes corroborate his opinion. (E.g. Filing No. 76-2, at CM/ECF p. 3; Filing No. 76-2, at CM/ECF p. 7; Filing No. 76-2, at CM/ECF p. 19; Filing No. 76-2, at CM/ECF p. 26.). UPRR alleges the articles Dr. Chiodo located do not suggest causation, but only mere association. (Filing No. 79, at CM/ECF p. 17).

A medical expert need not always cite published studies on general causation to reliably conclude that a particular object caused a particular illness. Turner v. Iowa Fire Equip. Co., 229 F.3d 1202, 1209 (8th Cir. 2000) (citing Heller v. Shaw Indus., Inc., 167 F.3d 146, 154 (3d Cir. 1999)). The Court further explained,

> The first several victims of a new toxic tort should not be barred from having their day in court simply because the medical literature, which will eventually show the connection between the victims' condition and the toxic substance, has not yet been completed. If a properly qualified medical expert performs a reliable differential diagnosis through which, to a reasonable degree of medical certainty, all other possible causes of the victims' condition can be eliminated, leaving only the toxic substance as the cause, a causation opinion based on that differential diagnosis should be admitted.

Turner, 229 F.3d at 1208-09.

Based on the holding in Turner, cited published studies on general causation are not necessarily required if the expert performs a reliable differential diagnosis.

ii. Specific Causation

Expert testimony is "reliable," when it is based on "methods and procedures of science," rather than "subjective belief or unsupported speculation." Kannankeril v. Terminix Int'l, Inc., 128 F.3d 802, 806 (3d Cir. 1997), as amended (Dec. 12, 1997); See also Concord Boat Corp. v. Brunswick Corp., 207 F.3d 1039, 1056 (8th Cir. 2000) (stating expert testimony is inadmissible if it is speculative, unsupported by sufficient facts, or contrary to the facts of the case). A district court is not required to "admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." General Elec. Co. v. Joiner, 522 U.S. 136, 137 (1997). "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." Id. at 143.

In order to carry the burden of establishing West was exposed to and injured by workplace toxins, "a plaintiff must demonstrate the levels of exposure that are hazardous to human beings generally as well as the plaintiff's actual level of exposure to the defendant's toxic substance. . . ." Mitchell v. Gencorp Inc., 165 F.3d 778, 781 (10th Cir. 1999).

> It is therefore not enough for a plaintiff to show that a certain chemical agent sometimes causes the kind of harm that he or she is complaining of. At a minimum, we think that there must be evidence from which the factfinder can conclude that the plaintiff was exposed to levels of that agent that are known to cause the kind of harm that the plaintiff claims to have suffered.

Wright v. Willamette Indus., Inc., 91 F.3d 1105, 1107 (8th Cir. 1996).

Dr. Chiodo asserts he conducted a "differential diagnosis of etiology" in this case. (Filing No. 76-2, at CM/ECF p. 18; Filing No. 76-2, at CM/ECF p. 35). The Eighth Circuit has held "a medical opinion about causation, based upon a proper differential diagnosis is sufficiently reliable to satisfy Daubert." Bland v. Verizon Wireless, (VAW) L.L.C., 538 F.3d 893, 897 (8th Cir. 2008); Turner, 229 F.3d at 1208. "In performing a differential diagnosis, a physician begins by 'ruling in' all scientifically plausible causes of the plaintiff's injury. The physician then 'rules out' the least plausible causes of injury until the most likely cause remains." Glastetter v. Novartis Pharm. Corp., 252 F.3d 986, 989 (8th Cir. 2001).

UPRR disputes Dr. Chiodo reliably "ruled in" alleged exposures as causes of West's renal cancer. (Filing No. 79, at CM/ECF p. 27). Dr. Chiodo claims he

"ruled in" exposure to diesel fuel and that West was a cigarette smoker[4]. ([Filing No. 76-2, at CM/ECF p. 18](#); [Filing No. 76-2, at CM/ECF pp. 35-36](#)). However, Dr. Chiodo is not aware of any specific details of West's alleged exposures. He is unaware of West's length of exposure, concentration of exposure, and the atmosphere of exposure. He relied on no data or facts to determine the level or length of West's exposure.

> Q: Let's continue to talk to the exposures you said you considered as part of the methodology.
>
> A: Yes, ma'am.
>
> Q: You said that you looked into exposures in this case. What other, facts did you consider as part of your understanding of the exposures of Mr. West? … And what did you consider his exposure to be to diesel exhaust?
>
> …
>
> A: The records I reviewed, that he was a locomotive engineer and had exposures consistent with him being a locomotive engineer, and in addition exposures to locomotive exhausts that were so bad that his wife would say when he would come home soot-filled, black, his hands were black, I made him get naked in the garage before he would come into my home. That's how filthy he was and how bad he smelled.

([Filing No. 76-2, at CM/ECF pp. 23-24](#)).

> Q. And what was his exposure to diesel exhaust as a locomotive engineer?
>
> A: … Locomotive engineers are an occupational group that would be categorized as having high risk of exposure to diesel exhaust and would in fact be anticipated to have high levels of exposure to diesel exhaust. Not to industrial hygiene precision, I don't have to know industrial hygiene precision. He was exposed to so many parts per

---

[4] Plaintiff testified West smoked up to 15 cigarettes a day for approximately 15 years. ([Filing No. 83, at CM/ECF p. 48](#)).

million per day. That's not required. Just that I have to recognize what his exposure was, have a general idea, although exact quantification is not required, to then have an opinion as to causation.

([Filing No. 76-2, at CM/ECF p. 24](#)).  Dr. Chiodo's assertion that West was exposed to a high-level of diesel exhaust is speculation based only on the job West held and supported with no further facts or data. Dr. Chiodo did not request to see UPRR's air sampling data or any industrial hygiene testing for conductors and engineers. ([Filing No. 76-2, at CM/ECF p. 25](#))[5]. And he did not consider Dr. Perez' report to formulate his opinion. ([Filing No. 76-2, at CM/ECF p. 2](#)).

Dr. Chiodo is not aware of West's specific exposure. Rather, he testified that he can form a medical causation opinion without any knowledge of the type, extent, or duration of toxin exposure because any exposure to diesel exhaust can cause renal cancer.

---

[5] Dr. Chiodo's entire deposition testimony was unnecessarily contentious, containing multiple instances of Dr. Chiodo refusing to properly and thoroughly answer the question posed. For example,

> Q: Okay. My question was though, back to my specific question, did you ask whether there was any industrial hygiene testing available from Union Pacific Railroad, either with regard to Mr. West or any other conductors or engineers in a similar situation?
>
> A: And I answered that question specifically. You can move to certify that if you wish, but I believe I did answer that question. I'm ready-
>
> Q: I don't--
>
> A: Well, you just didn't listen. So I did answer, that. I'm getting a little tired, it's almost three hours. I'm ready for your next question, ma'am
>
> Q: I don't recall your answer. Was it no?
>
> A. Well, ma'am, you should very carefully listen to answers. I did answer that in my answer. Please, I'm ready for your next question.
>
> Q So was your answer no?
>
> A No, ma'am. My answer's as I've given. Please try to listen to my answers.

([Filing No. 76-2, at CM/ECF p. 26](#)).

Q: Do you have an opinion as to what level of diesel exhaust can cause renal cancer?

A: I don't think there's a specific level. I don't think anybody can credibly provide a number for that. I'm not aware of such a number. If somebody has a number I would be -- I would be incredulous as to such a number.

(Filing No. 76-2, at CM/ECF p. 37). Even assuming Chiodo is correct—that any level of diesel exposure can cause renal cancer—the doctor makes no attempt to discern when the level and length of exposure crosses the line from a mere possible cause to a probable or likely cause of renal cancer, or that West's exposure met or exceeded that exposure level.

Plaintiff has therefore failed to meet the burden of proving West's exposure to diesel exhaust during his railroad employment was a cause of his cancer. No one questions Dr. Chiodo's professional credentials, but an opinion based solely on his credentials, with no useful explanation of how the facts of this case support the opinion, is useless to the jury[6]. See Bland v. Verizon Wireless, (VAW) L.L.C.,

---

[6] Dr. Chiodo relies too heavily on his credentials, while his opinion lacks the scientific reliability required by Daubert. Defense counsel's questions related to Dr. Chiodo's methodology for his opinion were answered with nothing more than Dr. Chiodo's recitation of his credentials. During his deposition Dr. Chiodo dares Defense counsel to find an expert as qualified as he is:

> I do apologize, because I just went on with an incredible amount of education, I don't think there's -- there would be very few other people in the world that would have as much education as I do, particularly focused on this. And you looked at me quizzically, but -- and that sounds like a big statement. You know what, I'll write a check for you today for a thousand dollars before we leave here. You can use -- you can access your computer, find somebody with my background in the world that has a combination of my background. If you can, you know, let's make it $10,000 dollars. You know why? Because I'm looking for experts myself in lawsuits. It's worth $10,000 dollars for me. So I will write that for you today. See, you're smiling, but now you're thinking well, gee, whiz, maybe this guy really does have an unusual background.
>
> ...
>
> Are you still thinking about that $10,000 dollars? That would be pretty good money for you.

(Filing No. 76-2, at CM/ECF p. 21).

538 F.3d 893, 897 (8th Cir. 2008) (affirming the district court's exclusion of a doctor's causation opinion which lacked grounds for determining whether Plaintiff was exposed to a sufficient dose of toxins).

Even assuming Dr. Chiodo properly "ruled in" West's cigarette use and exposure to diesel exhaust, he did not endeavor to "rule out" causes—a necessary step in performing a differential diagnosis. (Filing No. 76-2, at CM/ECF p. 36) ("Cannot be ruled out… Not that I didn't try to rule them out, that you just can't rule them out. They are causes that cannot be ruled credibly, in my opinion, be ruled out. They're both causes."). Dr. Chiodo goes as far to admit cigarette smoking could have independently caused West's renal cancer.

> In my opinion more likely than not, both cigarette smoking is a cause, and independently could and in this opinion, in my - since I can't rule it out as a cause of his renal cancer, more likely than not a cause of his renal cancer.
> …
> I just told you, in my opinion, the exposure circumstance in this matter, i.e., he has a history of cigarette smoking, is an independent risk factor for developing renal cancer that I cannot rule out and is, therefore, in my opinion, more likely than not a cause of his renal cancer.

(Filing No. 76-2, at CM/ECF p. 39).

The relaxed standard of causation under FELA still requires an expert applying a differential diagnosis to "rule out" alternative causes as the sole cause. See Brown v. Burlington N. Santa Fe Ry. Co., 765 F.3d 765, 773 (7th Cir. 2014); In re Conrail Toxic Tort Fela Litig., No. CIV. A 94-11J, 1998 WL 465897, at *6 (W.D. Pa. Aug. 4, 1998). Having failed to both properly rule in diesel fumes as a cause of West's renal cancer, and then failing to rule out other potential sole causes for the cancer, Dr. Chiodo failed to reliably perform the differential

diagnosis. Therefore, Dr. Chiodo's opinion is scientifically unreliable and will be excluded. In re Viagra Prod. Liab. Litig., 658 F. Supp. 2d 950, 959 (D. Minn. 2009) (holding a failure to "rule out" other possible causes will render the differential diagnosis scientifically unreliable).

MOTION FOR SUMMARY JUDGMENT

UPRR filed for summary judgment, arguing Plaintiff cannot make a *prima facie* FELA case without proving causation. The railroad argues the plaintiff must offer expert testimony to support a claim of medical causation, Dr. Chiodo's expert opinion on causation is unreliable and inadmissible and as such, UPRR is entitled to summary judgment. (Filing No. 80, at CM/ECF p. 10).

I.  **Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Dancy v. Hyster Co., 127 F.3d 649, 652-53 (8th Cir. 1997). The court does not weigh evidence in the summary judgment record to determine the truth of any factual issue. It merely determines whether there is evidence creating a genuine issue for trial. Bell v. Conopco, Inc., 186 F.3d 1099, 1101 (8th Cir. 1999).

The moving party bears the burden of showing there are no genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). However, "a party opposing a properly supported motion for summary judgment 'may not rest

upon the mere allegations or denials of [its] pleading, but must set forth specific facts showing that there is a genuine issue for trial.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288 (1968)). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are left for trial. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." Anderson, 477 U.S. at 251-52.

## II. Discussion

To be successful on the FELA claim, Plaintiff must prove causation. Expert testimony is required to establish causation in a FELA case. Brooks v. Union Pac. R. Co., 620 F.3d 896, 899 (8th Cir. 2010). Dr. Chiodo, the designated expert to testify about causation, has not provided a reliable scientific opinion, as required by Daubert. As such, the motion for summary judgment will be granted.[7]

Accordingly,

IT IS ORDERED:

1) The motion to exclude the expert testimony of Dr. Chiodo (Filing No. 74) is granted.

2) The motion for summary judgment (Filing No. 75) is granted.

3) The motion to exclude the expert testimony of Dr. Perez (Filing No. 73) is denied as moot.

4) Judgment will be entered accordingly.

---

[7] Since summary judgment will be granted in UPRR's favor, the court need not and does not address UPRR's motion to exclude the industrial hygiene opinions of Dr. Perez. UPRR's Daubert motion to exclude Dr. Perez' testimony will be denied as moot.

Dated this 3rd day of February, 2020.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge